# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 2398 | **DATE** | 3/9/2011 |
| **CASE TITLE** | Henriksen, et al. vs. United States | | |

**DOCKET ENTRY TEXT**

Plaintiffs Kurt and Kathy Henriksen brought this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, after Kurt injured his back in a 2007 collision with a United States Postal Service vehicle. Kurt alleges that he is unable to return to work. On September 22, 2008, one of the attorneys for Plaintiffs submitted Standard Form 95 on behalf of Kurt, asserting a claim for $3,422,618.49 in property damage and personal injuries. Plaintiffs now move the Court for an order granting Plaintiffs leave to seek damages which are approximately double the sum requested in the Standard Form 95. For the following reasons, the Court denies Plaintiffs' motion [31].

■[ For further details see text below.]　　　　　　　　　　　　　　　　　　　Docketing to mail notices.

# STATEMENT

## I. Background

On August 10, 2007, Plaintiff Kurt Henriksen was involved in an automobile collision with a postal service vehicle. Kurt was transported from the scene of the collision to St. Mary's Hospital in Kankakee, Illinois, complaining of back pain. He followed up with Dr. Frederick Brown on August 20, 2007, complaining of increased back pain, increased pain in his left leg, and new pain running down his right leg. Dr. Brown performed a physical examination and ordered an MRI. He also instructed Kurt to see Dr. Friedl Pantle-Fisher, who Kurt saw on August 27, 2007. Kurt began regular monthly consultations with Dr. Pantle-Fisher, during which time his condition did not improve.

In September 2008, Kurt, through counsel, submitted an administrative claim to the postal service seeking $9,618.49 for property damage and $3,413,000.00 for injury to his back and for pain in his back and radiating into both legs. In the claim, he described his condition as causing "constant and chronic pain, discomfort, and disability." His wife, Kathy, filed a separate administrative claim seeking an additional $1.5 million for loss of consortium based upon Kurt's "permanent" injuries. Approximately seven months later, on April 22, 2009, Plaintiffs filed suit under the Federal Tort Claims Act. Plaintiffs now seek to double the sum originally demanded in Kurt's administrative claim.

## II. Analysis

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, "effects a limited waiver of sovereign immunity for the United States" that "renders the federal government liable in tort as a private individual would be under like circumstances." *Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295,

1296-97 (7th Cir. 1991). Unlike plaintiffs seeking recovery from private entities, FTCA claimants must submit to the appropriate federal agency a claim for a "sum certain" before commencing a lawsuit, and the amount demanded in the administrative claim acts as a cap on damages recoverable in a suit commenced under the FTCA. See *Kanar v. United States*, 118 F.3d 527, 528-29 (7th Cir. 1997); 28 U.S.C. § 2675. Plaintiffs request relief from the damages cap under 28 U.S.C. § 2675(b), which allows an FTCA claimant to exceed the demand asserted in the administrative claim based upon "newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." The burden is on the plaintiff to show that evidence was newly discovered or that there are intervening facts. *Zurba v. United States,* 318 F.3d 736, 739 (7th Cir. 2003).

In *Zurba,* the plaintiff was struck by a car being driven by an FBI agent. Prior to filing an administrative claim for damages, in which she claimed $300,000 in damages, Zurba suffered from anxiety related problems. After her claim was denied, she filed suit claiming $1 million in damages. In affirming the district court's denial of the government's motion to limit the plaintiff's damages, the Seventh Circuit held that the district court did not commit clear error, as "[a]n unforseen worsening of a known injury may constitute 'newly discovery evidence' or 'intervening facts." 318 F.3d at 739. In so holding, the Seventh Circuit cited to *Michels v. United States,* 31 F.3d 686 (8th Cir. 1994), in which the Eighth Circuit noted:

> The government relies upon cases from other circuits holding that, when existing medical evidence and advice put the claimant "on fair notice to guard against the worst-case scenario" in preparing the administrative claim, a § 2675(b) motion to increase that claim in litigation will be denied. In our view, that is a proper interpretation of the phrase "not reasonably discoverable" * * * * But we also agree with the many decisions acknowledging that a known injury can worsen in ways not reasonably discoverable by the claimant and his or her treating physician, and holding that such "newly discovered evidence" or "intervening facts," if convincingly proved, can warrant § 2675(b) relief.

*Id.* at 688 (citations omitted). Thus, the question of whether Plaintiffs may increase their demand depends on the facts presented by Plaintiffs and specifically hinges on whether the "newly discovered evidence"—that Kurt is not a surgical candidate and now has permanent symptoms in his right foot that can be only partially managed with pain medication—was "not reasonably discoverable" when Kurt submitted his claim.

Plaintiffs maintain that the excess damages are warranted on the basis of "new facts" regarding the permanence of Kurt's injuries in the form of expert opinions from his treating physicians, Dr. Friedl Pantle-Fisher and Dr. Frederick Brown. Plaintiffs contend that at the time Kurt filed his administrative claim, it was neither known nor foreseeable that he would experience "significant permanent pain in his right leg and foot as a result of the collision." He contends that it was not "reasonably discoverable" that he would have permanent difficulty with walking, balance, going up and down stairs, lifting, and squatting, and that it was not reasonably discoverable that his pain would be aggravated by coughing, sneezing, bowel movements, and weather changes. Plaintiff contends that the extent and permanency of Kurt's disability was only reasonably discoverable with "the passage of time."

However, the evidence submitted in conjunction with the expert reports cuts against Plaintiffs' contention that they could not have foreseen Kurt's prognosis regarding the permanence of his injuries. With respect to Dr. Fisher's diagnosis, Kurt saw Dr. Fisher in her pain clinic on at least eight separate occasions over the course of a year *prior* to filing his administrative claim. During each of those visits, his "pain score", as measured by his subjective complaints of pain, remained consistently in the 7-8 out of 10 range. *Id.* Dr.

**STATEMENT**

Fisher noted that Kurt's prognosis as of May 22, 2008 (the last consult date reflected in Dr. Fisher's summary) was "guarded in regard to a full recovery * * * since so far he has not yet improved to the medical condition as to prior to the accident." *Id.* at p. 5. Even more tellingly, Kurt saw Dr. Fisher on two more occasions prior to filing his administrative claim, once on July 25, 2008 and again on August 22, 2008. At the earlier visit, Kurt again reported a pain score of 8/10, and at the later visit, which was a month prior to filing his administrative claim, it was even higher: 8 to 9/10. Given that Kurt consulted with a pain management specialist for a year without any improvement, this evidence does not support Plaintiffs' contention that they were unaware of the possibility that Kurt's injuries resulting from the collision might be permanent.

With respect to Dr. Brown's opinions, Kurt met with Dr. Brown on one occasion immediately following the collision in August 2007 (a year before the administrative claim). After reviewing Kurt's MRI scans, Dr. Brown summarized his findings in a report prepared on August 20, 2007, concluding that Kurt suffered from "[c]hronic low back pain secondary to L4-5 degeneration with recent aggravation by motor vehicle accident." Dr. Brown also noted that he "did not see any indication for surgical intervention at this time" and "did not think a fusion would likely address his lower extremity pain." *Id.* These initial findings arguably demonstrate that Kurt had reason to suspect that he could be faced with a permanent condition prior to filing his administrative claim. Plaintiffs contend that the opinions reflected in Dr. Brown's recent Rule 26(a)(2) report on the "permanence" of Kurt's condition were unknown before his deposition in May 2010, but the only basis for Dr. Brown's opinion in that regard is that Kurt "continues to complain of the same symptoms" (which remained constant throughout the year prior to filing his administrative claim).

Kurt has not been examined by Dr. Brown since his initial consultation in August 2007. Thus, it is difficult to see how Dr. Brown's "recent" opinions were somehow undiscoverable for the year before Kurt filed his administrative claim. Based upon Dr. Brown's initial findings, and given the lack of improvement over the course of Kurt's many consultations with Dr. Fisher prior to filing his administrative claim, Plaintiffs should have been on notice that Kurt's injuries might be permanent, and the sum demanded in his administrative claim could have so reflected.

Even if Kurt's doctors did not expressly tell him that his injuries were permanent prior to filing his administrative claim, as the only party capable of investigating his condition at that time, Kurt was obligated to exercise diligence in determining the nature and scope of his injuries prior to setting forth in his SF95 form the sum certain that he believed would compensate him for his damages. See *Salcedo-Albanez*, 149 F. Supp. 2d at 1245 ("In electing to file her administrative claim one year after the accident, plaintiff is additionally assumed to have properly investigated the nature and extent of her injuries."). This is particularly true considering that Kurt suffered from chronic back pain and radiating leg pain for many years prior to the accident as the result of failed back surgery. Based upon his medical history, Kurt had reason to know that such injuries could have long-term implications. When his pain did not improve after numerous monthly visits with a pain specialist over the course of a year, it is reasonable to expect that he at least could have discussed with his doctors (and his lawyers) the possibility that his injury might be more permanent. As the Seventh Circuit has recognized, "evidence which merely bears of the precision of the victim's prognosis is not newly discovered evidence" for purposes of § 2675(b). *Zurba*, 318 F.3d at 740-41 (noting that information can be newly discovered if it "*materially differs* from the worst-case prognosis of which the claimant knew or could reasonably have known when the claim was file") (emphasis in original); *cf. Milano v. United States*, 92 F. Supp. 2d 769, 771-72 (N.D. Ill. 2000) (allowing amended claim where, unlike here, the plaintiff's back condition worsened considerably due to subsequent surgeries where doctors had initially assured plaintiff that the prospects of full recovery were great and the risk of future surgery was minimal). At best, the medical evidence cited by Plaintiffs "serves only to bear out earlier suspicions" and thus "cannot

| STATEMENT |
|---|

unlock FTCA's narrow escape hatch." *Zurba*, 318 F.3d at 740 (quoting *Reilly v. United States*, 863 F.2d 149, 171 (1st Cir. 1988)).

Defendants have pointed to other evidence that bears upon Plaintiffs' awareness of the permanence of Kurt's injuries. For example, Plaintiffs' original complaint, which was filed a year prior to the time that Plaintiffs contend they were first made aware of the permanent nature of Kurt's injuries (*i.e.*, Dr. Brown's deposition in May 2010), alleges "injuries of a personal, pecuniary *and permanent nature* * * *." Cmplt. 13 (emphasis added). In addition, Kathy Henriksen, who submitted an SF-95 in March 2009, stated in her administrative claim that she was seeking damages for her "loss of consortium arising out of the injuries [Kurt] sustained * * * both past and future * * *." Although Kathy Henriksen's SF-95 was not filed until six months after her husband's, the fact that she sought damages based upon injuries that were assumed to continue into the future cuts against Plaintiffs' contention that they were unaware of Kurt's prognosis until over a year later in May 2010. Additionally, Kurt was represented by counsel when he filed his claim, and the claims form itself does not limit the amount of damages that he could have claimed. Given that he was in the best position to do so, it was Kurt's obligation, in consult with his lawyer, to contemplate the "worst-case scenario" when his original claim was made. See *Dickerson v. United States*, 280 F.3d 470, 476 (5th Cir. 2002) (holding that a plaintiff could not increase the damages sought in an administrative claim because the plaintiff could have reasonably obtained the information on the specific injuries that would be needed to make out the worst-case scenario when the original claim was made).

Plaintiff's condition is not newly discovered because it does not *"materially differ* [ ] from the worst-case prognosis of which the claimant knew or could reasonably have known when the claim was filed." *Zurba,* 318 F.3d at 741 (emphasis in original, citation and quotation marks omitted). Although Plaintiff may have taken a conservative view of the worst-case prognosis, the Court concludes that given that Kurt experienced no improvement in his condition during the year period between the accident and his administrative claim, it was foreseeable that his injuries might be permanent, and thus he could have included such damages in his administrative claim in the first instance. Accordingly, Plaintiffs' motion [31] is respectfully denied.

09C2398 Henriksen, et al. Vs. United States

Page 4 of 4