# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 2398 | **DATE** | 4/29/2011 |
| **CASE TITLE** | Henriksen, et al. vs. United States of America | | |

**DOCKET ENTRY TEXT**

This matter is before the Court on Plaintiffs' motion regarding certain evidentiary issues [48]. For the reasons set forth below, the Court grants in part and denies in part Plaintiffs' motion [48] and reserves ruling on the remaining issues.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

Plaintiffs Kurt and Kathy Henriksen have moved this Court to enter an order on certain evidentiary issues raised at the final pretrial conference. The Court addresses each request in turn.

**I.    Expert Reports**

Plaintiffs ask the Court to bar the parties' expert reports from being admitted into evidence. Plaintiffs correctly point out that the Rule 26(a)(2) reports of the testifying expert witnesses (Drs. Fisher, Brown, Cerullo, and Hurley) are hearsay. "The purpose of an expert report is to facilitate an effective cross-examination, minimize the expense of deposing experts, [shorten] the direct examination, and [prevent] ambush at trial." *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 328 (N.D. Ill. 2008) (citing *Malachinski v. C.I.R.,* 268 F.3d 497, 505 (7th Cir. 2001) and *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico,* 248 F.3d 29, 35 (1st Cir. 2001)). However, expert reports generally may not be received in evidence without violating the hearsay rule or Rule 403. *Id.* at 327-329 (noting that the expert report itself "would not be admissible at trial * * * for it is hearsay in its most pristine form") (collecting cases). Plaintiffs maintain that the 26(a)(2) reports do not fall under any recognized exception to the hearsay rule and therefore should not be received into evidence. See Fed. R. Evid. 801(c). Further, Plaintiffs contend that since the experts are testifying at trial, receiving both their testimony and respective reports would be unnecessarily cumulative. See Fed. R. Evid. 403.

As noted by the Government in its response brief, at the final pretrial conference, the Court had suggested that the parties include the expert reports in their respective exhibit books, with the understanding that the Court would rule on their admissibility if necessary at the conclusion of the trial. However, after a closer analysis of the pertinent case law, the Court concludes that the better course is to provisionally exclude the expert reports, subject to reconsideration should either party at trial satisfy the burden of showing some basis for admitting the reports. As pointed out by Plaintiffs at the final pretrial conference, and by the court in *Sommerfied*, an expert

typically does not testify to his report verbatim, "and as to those aspects about which there has been no testimony or testimony in a different form, the hearsay rule should operate with full vigor." *Sommerfield*, 254 F.R.D. at 328. Additionally, to the extent that the expert's testimony at trial merely repeats the expert report, the report would be redundant. See, *e.g.*, *Ramirez v. City of Chicago*, 2010 WL 4065615, at *1 (N.D. Ill. Oct. 13, 2010). During trial, should one or both of the parties seek the admission of an expert report or portion thereof, the Court will be in a better position to determine whether the selected portion falls within one or more of the exceptions to the hearsay rule.

As a special note regarding the admissibility of the Rule 35 independent medical exam report prepared by Dr. Hurley, the Court accepts Plaintiffs' arguments that the information recorded by Dr. Hurley during his examination of Plaintiff Kurt Henriksen is hearsay in the usual sense of that term (see *Mister v. Northeast Illinois Commuter Railroad Corp.*, 571 F.3d 696, 698 (7th Cir. 2009)) in that it was not conducted for the purposes of medical treatment but rather for the purposes of litigation. Dr. Hurley was retained by the Government to examine Mr. Henriksen. Litigation is not a "regularly conducted business activity" (Fed. R. Evid. 803(6)), and thus, "documents prepared specifically for use in litigation are * * * 'dripping with motivations to misrepresent.'" *Sommerfield*, 254 F.R.D. at 323 (quoting *Hoffman v. Palmer,* 129 F.2d 976, 991 (2d Cir.1942)); see also *United States v. Blackburn,* 992 F.2d 666, 670 (7th Cir. 1993) (noting "well-established rule that documents made in anticipation of litigation are inadmissible under the business records exception"). Nevertheless, the Court cannot conclude – especially without having seen the IME report or heard a full explication of its possible uses at trial – that the IME report is inadmissible in every conceivable respect. It will be the Government's burden at trial to demonstrate that any portion of the IME report that it seeks to admit falls within an exception to the hearsay rule, such as Rule 801(d)(2) (admission by a party-opponent). At this time, the Government has not identified any specific portions of the IME that it would seek to admit, and without this information, the Court cannot definitively say whether such evidence would be sufficiently trustworthy to be admitted. See *Sommerfield*, 254 F.R.D. at 323.

For these reasons, the Court reserves ruling on whether at least some portion of the expert reports (including the IME report) is admissible at trial, but directs the parties not to include the reports in their exhibit books.

## II.     Expert Witnesses in the Courtroom

Plaintiffs contend that the Government's expert witnesses should be excluded from the courtroom during the trial pursuant to Federal Rule of Evidence 615. The Government agrees to Plaintiffs' request, and therefore the Court grants Plaintiffs' motion as to this request. All experts will be excluded from the courtroom during the testimony of other expert and fact witnesses.

## III.    Dr. Cerullo's Draft Expert Report

Plaintiffs contend that the draft report of the Government's expert, Dr. Leonard Cerullo, should be produced pursuant to Rule 26(b)(4)(B). On December 1, 2010, amendments to Rule 26(b)(4)(B) went into effect. Under the previous language of Rule 26(b)(4)(B), experts' draft reports were discoverable; after December 1, they no longer are. Plaintiffs' experts were disclosed prior to the amendment, while the Government's were disclosed after December 1. The Order of the Supreme Court dated April 28, 2010, which implements the amended rules and provides for their effective dates, specifically states that the amended rules "shall take effect on December 1, 2010, and *shall govern* all proceedings thereafter commenced and, *insofar as just and practicable, all proceedings then pending*." (Emphasis added.) Plaintiffs maintain that the parties should be subject to the same version of Rule 26 and that applying "different versions of the same rule to the parties in this case is unjust and impracticable."

| STATEMENT |
|---|

But Plaintiffs' position is contrary to the tenor of the amended rule and in fact would lead to the more impracticable and unjust result in this case. The mandatory language of the rule ("shall govern") suggests that the new regime should control in pending cases unless applying it would be unjust and impractical. Here, Plaintiffs suggest that it would be unjust to impose amended Rule 26(b)(4)(B) on Plaintiffs when the former version of the rule was in effect at the time their expert reports were prepared. Putting aside the fact that Plaintiffs had notice of the amendment since the proposed amendments were published in April 2010 (prior to expert discovery commencing in this case), the result of Plaintiffs' request would lead to the "asymemetrical" result of allowing one-sided access to draft expert reports. Reading between the lines of the parties' briefs, it appears that although the drafts of Plaintiffs' expert's reports were "discoverable" under the prior rule, they were not actually discovered – that is, requested – by the Government, perhaps in anticipation of the new rule. Leaving the state of expert discovery where it currently stands – with neither side possessing draft expert reports, in conformity with the current version of Rule 26 – thus is both just and practical. Furthermore, Plaintiffs have been aware of the draft report since Dr. Cerullo's deposition on February 1, 2011. At the time, the Government alerted Plaintiffs to its position that the draft report was not discoverable under the newly amended Rule 26(b)(4)(B). Plaintiffs could have filed a motion to compel at any time after Dr. Cerullo's deposition but instead waited to raise the issue until the final pretrial conference, nearly three months after the close of expert discovery. Having failed to act promptly at the time that the dispute was ripe, Plaintiffs have given the Court another reason to deny their request. See *Patton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478, 491-92 (7th Cir. 2007) (upholding a denial of a motion to compel where party filed motion after the date for the completion of discovery and where no excuse for the lateness was offered). Plaintiffs' request that the Government be ordered to produce the draft report of Dr. Cerullo is denied.

### IV. Admissibility of Plaintiffs' Administrative Claim

Plaintiffs' final request is that certain contents of Plaintiff Kurt Henriksen's administrative claim file, including but not limited to the SF95 form and the photographs of Kurt's vehicle, should be excluded from evidence. The Government's brief response maintains that the administrative claim is admissible as either a prior statement by a witness or as an admission by a party-opponent and urges the Court to permit the inclusion of Plaintiff's administrative claim file in its entirety as a defense exhibit and to defer any admissibility or hearsay rulings until the conclusion of the trial assuming a dispute over the contents remains.

As with the Court's ruling in regard to the admissibility of the expert reports, the Court concludes that the administrative claim file should be provisionally excluded, subject to the Government's opportunity at trial to satisfy its burden on admissibility as to some or all of the file. At this time, without the benefit of having reviewed the claim file, the Court cannot say whether the file is entirely hearsay or whether it is probative of the issues to be determined at trial. During the final pretrial conference, the only portion of the claim file addressed in any detail was the photographs of Plaintiff's vehicle included within the file. The Government indicated that it may seek to introduce the photographs to assist the Court in determining whether the property damage correlates with Plaintiff's claimed injuries. Yet without expert testimony on the correlation between the vehicular damage and Plaintiff's injuries, it seems likely that the Court would be left to speculate on the relationship between the two, and such guesswork is not permissible. See *Baraniak v. Kurby*, 862 N.E.2d 1152, 1159 (Ill. App. Ct. 1st Dist. 2007) ("If we were to accept defendant's reasoning, we would essentially be conducting an end run around the relevancy rule, and photographs of damaged vehicles would always be admissible in trials of this nature on the grounds that credibility is always an issue * * * * [t]he effect of such a ruling would be to allow parties to accomplish indirectly what the courts have already determined is improper absent expert testimony, *i.e.,* to argue or even imply that there is a correlation between the extent of vehicular damage and the extent of a person's injuries caused by an accident."). Therefore, without expert testimony to assist the Court in deciphering the photographs, the relevance of the photographs would appear to be next to nil and almost

| STATEMENT |
|---|

certainly outweighed by their prejudicial effect.

As to the remaining contents objected to by Plaintiffs–the SF95 claim form, documentation supporting Plaintiff's property damage claim, records from the Peotone Fire Department, St. Mary's Hospital, and the University of Chicago Hospitals, the report of Dr. Pantle-Fisher, the pain diary of Plaintiff, and Plaintiff's medical bills–the Government has not identified whether it intends to seek the admission of any of these items into evidence, nor does it respond to any of Plaintiffs' arguments for why these contents are inadmissible. The only position taken by Plaintiffs thus far is that the administrative claim, like a complaint filed in federal court, is generally admissible either as a prior statement by a witness or an admission by a party-opponent. Resp. at 4 (citing Fed. R. Evid. 801(d) and *Williams v. Union Carbide Corp.*, 790 F.2d 552, 555 (6th Cir. 1986)). While the general rule is that a pleading in one proceeding is admissible and may be considered as an adverse evidentiary admission in a subsequent proceeding (see *Walaschek & Associates, Inc. v. Crow,* 733 F.2d 51, 54 (7th Cir. 1984); *Sunkyong Int'l Inc. v. Anderson Land & Livestock Co.,* 828 F.2d 1245, 1249 n.3 (8th Cir. 1987); *Williams,* 790 F.2d at 555-56 (6th Cir. 1986)), a limitation imposed on that general rule of admissibility is the requirement of "inconsistency" between the two pleadings. See *Contractor Utility Sales v. Certain-Teed Products,* 638 F.2d 1061, 1084 (7th Cir. 1981) (indicating that there must be an inconsistency between the original and final complaint); *LWT, Inc. v. Childers,* 19 F.3d 539, 542 (10th Cir. 1994) (inconsistent allegations contained in prior pleadings are admissible as evidence in subsequent litigation); *Fidelity & Deposit Co. v. Hudson United Bank,* 653 F.2d 766, 777 (3d Cir. 1981) (finding requirement of inconsistency between prior complaint and final complaint a necessary predicate to admissibility of prior complaint); *Estate of Spinosa v. Int'l Harvester Co.,* 621 F.2d 1154, 1157 (1st Cir. 1980) (upholding the trial court's exclusion of evidence of prior pleadings requiring "inconsistency" as a predicate to admitting evidence of prior pleadings); *Mitchell v. Fruehaf Corp.,* 568 F.2d 1139, 1147 (5th Cir. 1978) (upholding the trial court's exclusion of earlier state court pleadings because it found no inconsistency between the prior state suit based on negligence and the federal suit based on defective design). Thus, even accepting the Government's position, in order to make a determination as to whether portions of the administrative claim file are admissible, the Court must address whether the content of the file is somehow inconsistent with the positions taken by Plaintiffs at trial. At this time, without having reviewed the administrative claim file and heard the testimony at trial, such determination would not be appropriate. Should the issue arise at trial, the Court will be in a better position to address the admissibility of the claim file in light of the standard articulated above as well as the Rule 403 concerns such as whether the probative value of the administrative file is substantially outweighed by the danger of unfair prejudice or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

For these reasons, while the Government should not include the administrative claim file in its exhibit book, the Court reserves final ruling on the admissibility of the contents of the administrative claim file (or any part of it) until the Government seeks its admission at trial.

*[signature]*